IN THE COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO

| | |
|---|---|
| YOKOHAMA OFF-HIGHWAY TIRE AMERICA, INC.<br>201 Edgewater Drive<br>Wakefield MA 01880<br><br>        Plaintiff,<br><br>-vs-<br><br>DHAVAL NANAVATI<br>12 Potter Road<br>Lexington MA 02421<br><br>-and-<br><br>MAHANSARIA TYRES PRIVATE LIMITED<br>c/o Tyres International Inc.<br>4637 Allen Road<br>Stow OH 44224<br><br>-and-<br><br>TYRES INTERNATIONAL, INC.<br>c/o Statutory Agent<br>C T Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus OH 43219<br><br>-and-<br><br>TYRES INTERNATIONAL, INC.<br>4637 Allen Road<br>Stow, Ohio 44224<br><br>        Defendants. | CASE NO.<br><br>JUDGE<br><br>**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY, MISAPPROPRIATION OF TRADE SECRETS, TORTIOUS INTERFERENCE, CIVIL CONSPIRACY, AND UNFAIR COMPETITION.**<br><br>**Jury Demand Endorsed Hereon** |

**EXHIBIT 1**

Plaintiff Yohohama Off-Highway Tire America, Inc. ("YOHTA"), for its complaint against Dhaval Nanavati ("Nanavati"), Mahansaria Tyres Private Limited ("MTPL") and Tyres International, Inc. ("Tyres") states as follows:

## NATURE OF CLAIM FOR RELIEF

1. This action arises from Nanavati's resignation, breach of his Confidentiality, Non-Competition, Non-Solicitation, Non-Disclosure and Confidentiality Agreement ("Agreement"), and fiduciary obligations owed to YOHTA.

2. In violation of the Agreement, Nanavati, former President of YOHTA, accepted employment at MTPL as its Global President for the marketing and sale of MTPL's tire brand Ascenso. Ascenso is an off-highway tire brand designed to compete directly with YOHTA. Upon information and belief, Nanavati, as MTPL's Global President, has begun to compete unfairly by interfering with YOHTA's existing and prospective customer relations, contacting current sales managers and employees of YOHTA and is believed to be using YOHTA's confidential and proprietary information to solicit tire customers for MTPL. Tyres was acquired by MTPL in 2021 to be MTPL's exclusive North American distributor of Ascensio's line of tires in order to compete with YOHTA. Indeed, Tyres is now known as Ascenso Tires North America.

3. To prevent irreparable harm arising from this course of wrongdoing, YOHTA seeks a Preliminary Injunction to bar Nanavati and anyone acting in concert with him, including MTPL and Tyres, from using YOHTA's confidential and proprietary information, soliciting business from YOHTA's customers, and to otherwise enforce Nanavati's contractual and common law duties including the Agreement's non-competition and non-solicitation provisions. If Nanavati is not enjoined immediately from his continued employment with MTPL, solicitation

of tire customers and YOHTA employees, YOHTA will continue to suffer substantial and irreparable harm.

## PARTIES AND VENUE

4. Alliance Tire Americas, Inc. was acquired by Yokohama Rubber Co., Ltd in 2016 and was renamed as YOHTA in 2021. YOHTA is incorporated under the laws of the State of Delaware, with its principal place of business in Wakefield, Massachusetts. YOHTA sells various lines of tires, including off-highway tires, for a variety of applications, throughout North America.

5. Nanavati is the former President of YOHTA and is currently domiciled in the State of Massachusetts, residing at 12 Potter Rd., Lexington, MA.

6. Tyres is an Ohio corporation with its principle place of business at 4637 Allen Rd., Stow, Ohio.

7. Upon information and belief, Tyres is controlled by MTPL and is the sole and exclusive distributor of Ascenzo branded tires throughout North America. Tyres is required, among other things, to:

    (a)    stay in continuous contact with MTPL;

    (b)    follow all guidelines and directives from MTPL;

    (c)    keep MTPL informed of all of Tyres' activities;

    (d)    provide MTPL with any and all information request by MTPL;

    (e)    act in the interests of MTPL at all times;

    (f)    provide MTPL with all books and records for the distribution of products.

8. MTPL is a foreign corporation with its principle place of business in Mumbai, Maharashtra, India. MTPL conducts business in the state of Ohio through its control of Tyres as set forth in paragraph 7.

9. On May 1, 2013, Nanavati agreed to accept a leadership position with Alliance Tire Americas, Inc. As part of the mutual consideration for his employment, Nanavati agreed to a Non-Competition, Non-Solicitation, Non-Disclosure and Confidentiality Agreement (the "Agreement"). The Agreement states that it shall be governed by Tennessee law and has remained in full force and effect. A copy of Nanavati's signed offer of employment and signed Agreement are attached hereto as Exhibit A.

10. Nanavati's employment as Global President of MTPL, Nanavati's and MTPL's control of Tyres, and Tyres conduct, is in breach of the Agreement, including but not limited to Nanavati's agreement to refrain for a period of one year following the termination his employment from:

(a) Performing competing services, directly or indirectly, on behalf of any company, business, corporation or enterprise which is engaged in, or is seeking to enter into, the business of class of business in which the Company is engaged at the time of employment terminates.

(b) Soliciting, encouraging, or attempting to hire any employee or former employee of the Company.

## FACTS

11. YOHTA sells and distributes tires, including off-highway tires, for a variety of applications throughout North America.

12. As President of YOHTA, Nanavati was responsible for directing all activities of YOHTA throughout North America, including but not limited to pricing strategies, customer information and strategies, marketing strategies and forecasts for growth and development of the company. Nanavati was also an officer of The Yokohama Rubber Co. Ltd. and was directly involved in strategic meetings in which confidential and proprietary information was shared and discussed.

13. YOHTA invested significant time and resources in developing business practices, strategies, tools, resources and equipment which provided Nanavati with a competitive advantage to increase sales of YOHTA's tire products in the market. For example, Nanavati led high level management conferences regarding pricing strategies, was directly involved in establishing proprietary information regarding YOHTA's margins and costs, and was given flexibility when setting prices for YOHTA products sold through North America.

14. Nanavati was instrumental in directing YOHTA's activity and strategic dealer meetings, and developing close ties with key customer executives.

15. Nanavati was provided confidential and proprietary information regarding YOHTA's new product lines and strategic plans for future production of tires.

16. Maintaining the confidentiality and propriety of YOHTA's business practices, strategies, tools, customer relations, and other proprietary information is vital to YOHTA's continued growth and success in North America, and the tire industry in general.

17. As YOHTA's President, Nanavati had access to confidential and proprietary customer lists, historical data from customers, prospective business plans, and details on future marketing strategies. Essentially, Nanavati actively participated in developing the "playbook" regarding how YOHTA was going to compete.

18. Effective July 22, 2022, Nanavati resigned his employment with YOHTA. Nanavati advised YOHTA that he was not going to be working in the tire industry and would not be working for a competitor. Contrary to his representations, Nanavati, shortly after his resignation, agreed to take a lucrative position with one of YOHTA's competitors, MTPL.

19. Within the past thirty-days, Nanavati has contacted multiple current sales executives of YOHTA and advised them that he was now the Global President of Ascenso. His

Sandra Kurt, Summit County Clerk of Courts

deceptive stated purpose was "just to let them know of his new position." Nanavati has also misused confidential information for the purpose of assisting Ascenso to compete unfairly.

20. Nanavati's employment with MTPL and his conduct is in violation of his Agreement with YOHTA.

## COUNT I
### (Breach of Contract)

21. YOHTA re-alleges and incorporates herein the allegations set forth in paragraphs 1 through 20 of this Complaint.

22. Nanavati breached the Non-Compete, Non-Solicitation, Non-Disclosure and Confidentiality provisions of his Agreement with YOHTA.

23. Upon information and belief, Nanavati breached his contractual obligations to YOHTA under the terms of the Agreement by, among other things, accepting employment with a competitor, utilizing and disclosing YOHTA's confidential and proprietary information, including customer data, pricing schemes, cost and margin information, new product development information, and other information, and contacting current and/or former employees of YOHTA for the implied purpose of encouraging them to leave YOHTA.

24. Upon information and belief, Nanavati breached his contractual obligations to YOHTA under the Agreement by providing said information to MTPLA and Tyres, and by misappropriating the information Nanavati obtained as President of YOHTA and as a member of the global management team to solicit business from existing and targeted customers.

25. YOHTA performed all its obligations and conditions under the Agreement.

26. Nanavati's foregoing breaches of contractual duties has, and continues to, cause YOHTA to be irreparably harmed in an amount that cannot readily be ascertained or compensated by money damages.

27. Unless Nanavati is enjoined from further breaches of his contractual duties, YOHTA will continue to suffer irreparable injury.

28. Nanavati's ongoing breaches of his Agreement constitute transgressions of a continuing nature, for which YOHTA has no adequate remedy at law.

## COUNT II
### (Breach of Fiduciary Duty)

29. YOHTA re-alleges and incorporates herein the allegations set forth in paragraphs 1 through 28 of the Complaint.

30. Based upon his dishonest statements about his future employment plans, it is believed that prior to his resignation Nanavati engaged in a course of conduct inconsistent with his common law fiduciary obligations and duties of loyalty to protect the interests of YOHTA and to refrain from doing anything that would work to YOHTA's injury. In planning and preparing for his departure, Nanavati fell far below the standard of conduct required of employees.

31. YOHTA suspects Nanavati removed confidential and proprietary data for the purpose of soliciting YOHTA's customers to transfer their tire sales accounts to a competitor, and by soliciting YOHAT's customers, Nanavati has breached his fiduciary duties to YOHTA.

32. As described above, Nanavati misappropriated YOHTA's confidential and proprietary information in breach of his contractual and fiduciary duties to YOHTA.

33. By virtue of the foregoing improper conduct by Nanavati, which YOHTA maintains is ongoing, YOHTA is, and continues to be, irreparably harmed.

34. Nanavati's ongoing breaches of his fiduciary duties constitute transgressions of a continuing nature, for which YOHTA has no adequate remedy at law.

Sandra Kurt, Summit County Clerk of Courts

## COUNT III
### (Misappropriation of Trade Secrets and Confidential Information)

35. YOHTA re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 34 of this Complaint.

36. YOHTA's confidential and proprietary information is known only to YOHTA and its internal executive and sales team. It derives independent economic value from not being generally known to the public and not be readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

37. YOHTA goes to great lengths and expense to maintain the confidentiality of its trade secrets.

38. Information regarding YOHTA's tools and equipment, customers, strategic plans, new product lines, suppliers and pricing schemes, margins and costs, and the other confidential and proprietary information described above, are trade secrets entitled to protection.

39. As described above, upon information and belief Nanavati has misappropriated YOHTA's trade secrets. Misappropriation of YOHTA's trade secrets is threatened.

40. Actual or threatened misappropriation of YOHTA's trade secrets should be enjoined pursuant to Tenn. Code Ann. § 47-25-1703.

41. YOHTA is entitled to recover damages for misappropriation pursuant to Tenn. Code Ann. § 47-25-1704.

## COUNT IV
### (Tortious Interference with Contract and Business Relations)

42. YOHTA incorporates by reference the allegations of Paragraphs 1 through 41 as if rewritten at length.

43. At all pertinent times hereto, MTLP knew of the existence of the Agreement between YOHTA and Nanavati. Indeed, the managing director of MTPL, Yogesh Mahansaria,

Sandra Kurt, Summit County Clerk of Courts

was the CEO of Alliance Tire Group at the time Nanavati was hired and executed the Agreement.

44. Notwithstanding its knowledge of the existence of Agreement between YOHTA and Nanavati, MTPL has intentionally procured the breach of the Agreement without legal justification, which has resulted in damage to YOHTA. This conduct constitutes the tort of tortious interference with contract.

45. YOHTA has been damaged by MTPL's tortious interference with YOHTA's Agreement with Nanavati.

46. Because MTPL's conduct was willful or malicious, YOHTA is also entitled to an award of punitive damages including attorney fees.

## COUNT V
### (Civil Conspiracy)

47. YOHTA incorporates by reference the allegations of Paragraphs 1 through 46 as if rewritten at length.

48. MTPL, Tyres and Nanavati have conspired with each other to breach the Agreement, unfairly compete with YOHTA, to utilize confidential and proprietary information of YOHTA with the intent to cause YOHTA harm and has caused YOHTA harm.

49. Defendants' conduct is malicious and unlawful.

50. Because Defendants' conduct is malicious, YOHTA is also entitled to an award of punitive damages including attorney fees.

## Count VI
### (Unfair Competition)

51. YOHTA incorporates by reference the allegations of Paragraphs 1 through 50 as if rewritten at length.

Sandra Kurt, Summit County Clerk of Courts

52. Defendants have engaged, and are engaging, in a course of conduct of such a persistent and continuous nature with the intent to damage to YOHTA in the production and sale of its products. This conduct includes but is not limited to the Defendants use of confidential and proprietary information and their contact with current and former employees. This conduct constitutes the tort of unfair competition.

53. Because Defendants' conduct was willful or malicious, YOHTA is also entitled to an award of punitive damages including attorney fees.

WHEREFORE, YOHTA demands a judgment against the Defendants as follows:

1. A preliminary and permanent injunctive relief prohibiting Nanavati, MTPL, Tyres and anyone associated with them or acting in concert with them from directly or indirectly:

    (a) Possessing or making use of YOHTA's confidential and proprietary information or trade secrets, including without limitations, its pricing information, sales techniques, sales information, and the identity of its customers;

    (b) Interfering with YOHTA's contracts or business relationships with existing customers and employees;

    (c) Defaming or disparaging YOHTA, YOHTA's financial condition, or YOHTA's products;

    (d) Causing, inducing or conspiring with any other person or entity to do any of the foregoing.

2. A preliminary and permanent injunctive relief prohibiting Nanavati and anyone associated with him or acting in concert with him from directly or indirectly:

    (a) Competing with YOHTA for one year following Nanavati's termination from YOHTA with such time to be extended by each day that Nanavati is in breach of the Agreement.

    (b) Soliciting, encouraging, inducing, attempting to hire, or hiring any employee of former employee of YOHTA, or inducing any employee to terminate their employment with YOHTA.

Sandra Kurt, Summit County Clerk of Courts

3. Preliminary and permanent injunctive relief prohibiting Nanavati, MTPL, Tyres and anyone associated with them or acting in concert with them from directly or indirectly disclosing, using, or distributing any confidential or proprietary information of YOHTA.

4. Compensatory damages in an amount in excess of $25,000.

5. An award of punitive damages including YOHTA's attorney fees; and

6. Such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Trial by jury is hereby demanded.

Respectfully submitted,

/s/ R. Brian Borla

Kenneth A. Calderone (0046860)
R. Brian Borla (0077322)
**HANNA, CAMPBELL & POWELL, LLP**
3737 Embassy Parkway, Suite 100
Akron OH 44333
(330) 670-7324 (T) * (330) 670-7440 (FAX)
(330) 670-7339 (T) * (330) 670-7453 (FAX)
kcalerone@hcplaw.net
bborla@hcplaw.net

Attorneys for Plaintiff
Yokohama Off-Highway Tire America, Inc.

<<HCP #1260726-v1>>

# Alliance Tire Americas, Inc.



May 1, 2013

Dhaval Nanavati
100 Lexington Ridge Road, Unit 3114
Lexington, MA  02421

Dear Dhaval :

We are pleased to extend an offer of employment with Alliance Tire Americas, Inc. (the "Company"). With your acceptance of this offer, you will assume the position of VP Alliance US Aftermarket. You will report directly to Company President, Manny Cicero. It is our intention to commence your employment with Alliance Tire Americas, Inc. effective May 1, 2013.

We are prepared to offer to you the following compensation package:

**Base Compensation:** $220,000 per annum. You will be paid on a bi-weekly schedule, paid in arrears. You will be an exempt employee following the guidelines of the Fair Labor Standards Act (FLSA). The Company agrees to provide an annual performance evaluation at which time your base annual compensation will be reviewed.

**Bonus Program:** You will be eligible to participate in a variable pay performance plan with a targeted bonus amount, the payment of which will depend upon your achieving certain KRAs as well as the Company and ATG attaining their respective profit performance levels. If the required threshold levels are achieved the bonus payment can range from 85% to 120 % of the target bonus amount. In 2013 your target bonus amount will be $60,000

**Temporary Housing and Relocation**  The Company agrees to provide temporary housing for you and your family for a period not to exceed six weeks following your arrival in the U.S. In addition, the Company agrees to provide an interest free loan of up to $100,000 for a period of five years following your purchase of a residence after your arrival. The loan will be repaid in equal monthly installments over a period of sixty consecutive months. You will be required to execute a Promissory Note documenting such loan at the time the loan proceeds are provided.

Further, the Company will provide reimbursement of reasonable relocation expenses in an amount up to twenty percent (20%) of your annual base salary ("Reimbursable Amount"). Such reimbursement will be grossed up twenty-five percent (25%) to ameliorate the tax impact of such payment. As your international relocation did not include moving household goods, reimbursable expenses may also include costs incurred in furnishing and setting up your home in the U.S. Upon your request, any remaining unspent portion of the Reimbursable Amount can be reserved by the Company for your later use to defray costs, if and when



ALLIANCE GALAXY PRIMEX
www.atgtire.com

Corporate Headquarters: 201 Edgewater Drive, Suite 285, Wakefield, MA 01880 | Tel: 781-321-3910 | Toll Free: 877-978-4737 | Fax: 888-371-6195
Sales Office & Warehouse: 9700 Wingfoot Road, Houston, TX 77041 | Tel: 713-227-2800 | Toll Free: 800-999-5775
Sales Offices: 800 Watterson Curve, Trussville, AL 35222 | Tel: 205-322-7001 | Toll Free: 800-777-9926
Warehouse: 5838 Advantage Cove, Memphis, TN 38141 | Tel: 901-795-4232 | Toll Free: 866-848-8473
Warehouse: 4037 Lower Valley Road, Parkesburg, PA 19365 | Tel: 800-343-3276

you should relocate to another ATG entity. A copy of the Company's Relocation Policy is included with this Offer Letter.

The Company will pay for one set of roundtrip coach class airline tickets to India per year for you and your family. Such tickets are to be purchased reasonably in advance of travel and in accordance with such other measures as may be prudent to moderate the expense.

**Group Health Benefits:** You will be eligible to participate in Alliance's employee Group Health Benefit plans to the extent allowed by law. Details about our Group Health Benefit plans are included in the forthcoming new hire package.

**Paid Time Off and Other Benefits:** Details about the Company's Paid Time Off policy are included in the forthcoming new hire package. Your seniority will be based upon your earliest date of hire with an Alliance Tire Group entity. You will also be provided with the details of the Alliance Tire Americas, Inc. 401k Profit Sharing Plan. You will be eligible, to the extent allowed, to participate in any other Company-provided benefit plans. You will be provided four weeks paid vacation to be accrued and used in accordance with the Company's Paid Time off Policy.

**Company Vehicle:** The Company will make available for your use a Company owned or leased vehicle or alternatively provide you with a car allowance, at the option of the Company and in consultation with you. Please see the Auto Usage Policy for more details.

**Travel and Entertainment:** Normal expenses incurred in conducting business, and consistent with the Company's Travel Policy, will be reimbursed upon timely submission on the Company's standard expense report. Travel budgets will be given and should be strictly adhered to.

**Non-Compete / Confidentiality Agreement:** You will be required to sign a "Non-Competition, Non-Solicitation, Non-Disclosure and Confidentiality"agreement as a condition of employment, which includes you agreeing to keep all trade secrets, customer lists, pricing, etc. obtained while employed by Alliance Tire Americas, Inc. confidential and not divulging information to anyone outside of Company.

A full-new hire package will be forthcoming and includes a PTO and Travel policy and other important information. Should you have any questions regarding this letter or the contents of the new hire package, please contact Rose DiFilippo at 781-321-3910 x237.

You specifically acknowledge and agree that your employment by Alliance Tire Americas, Inc. is at-will. Nothing in this document or in the Alliance Tire Americas, Inc. Employee Handbook or any Company policy may be construed as a contract of employment or as creating a contractual arrangement of any nature between you and Alliance or as fixing a specific or unlimited term of employment. Moreover, no employee is authorized to alter your status as an at-will employee.

The Company requests your cooperation in returning a signed copy of this letter to Rose DiFilippo as soon as possible by email at rdifilippo@atgtire.com or by fax to 781-321-4219.

These are exciting times for the Company. We look forward to your acceptance of this offer and to working with you to grow the business. Please accept my sincere welcome, as I know you will make a significant contribution to the success of our Company.

Sincerely,

Manny Cicero
President
Alliance Tire Americans Inc.

I agree to the terms and conditions of employment contained in this letter.

_____  5/1/13
ACCEPTED & AGREED          DATE

3



**Policy and Procedures**
Section: Human Resources
Non-Compete, Non-Solicitation, Non-Disclosure, Confidentiality

Issue/ Effective Date: 1/1/2010                Replaces previously issued

Protecting the Company's relationship with its customers and protecting the Company's confidential information are responsibilities of every employee and we all share a common interest in doing so.

Each employee is required to execute the Company's Non-Competition, Non-Solicitation, Non-Disclosure and Confidentiality Agreement (the "Agreement") as a condition of employment. In the event an employee did not execute the Agreement when he or she joined the Company the employee will be required to execute the Agreement in order to be eligible to receive any bonuses, promotions or salary increases. The tire business is a highly competitive one and the Company invests a great deal of its resources in developing and maintaining its customer relationships. The Agreement requires the employee to refrain from competing with the Company both during the period of employment and for a one year period following the termination of the employment relationship.

Maintaining the Company's propriety information is equally important for the Company's continued growth and success. Do not discuss the Company's confidential business with anyone who does not work for us. Violations of this nondisclosure mandate shall be subject to disciplinary action, up to and including discharge. Do not take company documents outside the office without the consent of management. Shred all confidential company documents that are no longer needed.

All telephone calls regarding a current or former employee's position or compensation must be forwarded to the Human Resource Department.

Violations of this policy will result in discipline up to and including discharge

In consideration of my employment and the compensation paid to me by Alliance Tire Americas, Inc. (the "Company"), and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, I hereby acknowledge and agree as follows:

    a.    As a _____, my job responsibilities require me to represent the Company with its clients and customers, to create good will for the Company through my efforts, and work with highly Confidential Information of the Company.

    b.    My job duties require me to learn and protect Confidential Information of the Company including, but not limited to, trade secrets, customer lists, pricing information and strategies, scientific information, information regarding Company employees, product development information, marketing strategies, customer contact information, financial data, and confidential business plans.

    c.    Therefore, I agree that I will not, during the term of my employment and for a period of one (1) year following the termination of my employment with the Company, unless otherwise expressly agreed to by the Company in writing:

        (1)    Perform competing services, directly or indirectly, on behalf of any company, business, corporation or enterprise which is engaged in, or is seeking to enter into, the business or class of business in which the Company is engaged at the time my employment terminates.

        (2)    Solicit, encourage, induce, attempt to hire, or hire any employee or former employee of the Company or assist in such solicitation, encouragement, attempt to hire, or hiring by any other person or business entity or solicit, encourage, or induce any such employee to terminate his or her employment with the Company, or solicit, encourage, or induce any prospective employee not to accept employment with the Company.

    d.    I further understand that this Agreement shall survive any changes in my compensation, title or duties while I am employed by the Company and the Company may assign this Agreement to any company or entity with which it merges or which it purchases, or to any company or entity which may purchase the Company.

    e.    I further agree that I will exercise all due and diligent precautions to protect the integrity of the Company's confidential Information and to keep confidential all documents and records embodying all or part of the Confidential Information, whether prepared by me or others. I further agree that during and after my employment by the Company, I will not use any Confidential Information for myself or others or disclose or communicate any Confidential Information to any third party for any purpose whatsoever without the Company's express prior written consent. I understand that Confidential Information will not include information that is in the public domain, provided I did not release the information into the public domain in violation of my obligations to keep the Company's Confidential Information confidential.

Sandra Kurt, Summit County Clerk of Courts

f. I further agree, except as otherwise expressly agreed to by the Company in writing:

(1) to devote all of my time, basic skills, and energies to the work of the Company while in the Company's employ. Further, that during the term of my employment I will not work for, act as a consultant to, or advise any other company or person in the tire or wheel business.

(2) not to disclose to anyone forever the above listed trade secrets and confidential information and all other trade secrets furnished by the Company and designated as confidential and proprietary or to use such trade secrets or confidential information to the detriment of the Company.

(3) so long as employed by the Company, I shall not, directly or indirectly, solicit the trade or patronage of any of the customers or prospective customers of the Company as set forth above.

(4) to recognize the unusual nature of the Company's business and trade secrets and agrees that the Company shall be entitled to immediate injunctive relief against me for any breach of this Agreement in addition to any other remedies or damages.

g. This agreement shall be governed by and construed in accordance with the laws of Tennessee.

h. It is specifically understood and agreed that any breach of the provisions of this Agreement by me will result in irreparable injury to the Company and its subsidiaries, that the remedy at law alone will be an inadequate remedy for such breach and that, in addition to any other remedy it may have, the Company and its subsidiaries shall be entitled to enforce the specific performance of this Agreement by me through both temporary and permanent injunctive relief without the necessity of proving actual damages, but without limitation of their right to damages and any and all other remedies available to them, it being understood that injunctive relief is in addition to, and not in lieu of, such other remedies. In the event that any covenant contained in this Agreement shall be determined by any court of competent jurisdiction to be unenforceable by reason of its extending for too great a period of time or over too great a geographical area or by reason of its being too extensive in any other respect, it shall be interpreted to extend only over the maximum period of time for which it may be enforceable and/or over the maximum geographical area as to which it may be enforceable and/or to the maximum extent in all other respects as to which it may be enforceable, all as determined by such court in such action. The existence of any claim or cause of action which I may have against the Company or any of its subsidiaries or affiliates shall not constitute a defense or bar to the enforcement of any of the provisions of this Agreement.

i. The parties hereby irrevocably submit to the non-exclusive jurisdiction of the state of Tennessee to construe and enforce the covenants contained in this Agreement. In the event that the courts of any state shall hold such covenants unenforceable (in whole or in part) by reason of the breadth of such scope or otherwise, it is the intention of the parties hereto that such determination shall not bar or in any way affect the right of the Company or any its subsidiaries to the relief provided for herein in the courts of any other state within the geographic scope of such covenants, as to breaches of such covenants in such other respective states, the above covenants as they relate to each state being, for this purpose, severable into diverse and independent covenants.

j. I represent that I am free to enter into this Agreement, that I have not and will not become subject to any agreement in conflict with this Agreement, and that I will not disclose to the Company or use for the Company's benefit any trade secrets or Confidential Information which is the property of another party. I warrant that I am not a party to any other restrictive agreement limiting my activities in the field of employment by the Company and that I will hold the Company harmless from any and all suits and claims arising out of any alleged or actual breach of such restrictive agreements.

**I understand that my obligations under this Agreement shall survive the termination of my employment with the Company regardless of the manner of or reasons for my termination.**

By signing this agreement, I acknowledge that I have read this agreement, and that I agree to all of its terms.

_DHAVAL NANAVATI_
**Employee's Name**

_5/1/13_
**Date**

*\*Please note: This policy will remain in effect until it is superseded.*

4